UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Eileen Pike,<br><br>    Plaintiff,<br><br>v.<br><br>Alliant Capital Management, LLC d/b/a ACM, LLC,<br><br>    Defendant. | Case No. 1:20-cv-00561<br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE OHIO CONSUMER SALES PRACTICES ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## **PARTIES**

1. Plaintiff, Eileen Pike ("Eileen"), is a natural person who resided in Cincinnati, Ohio, at all times relevant to this action.

2. Defendant, Alliant Capital Management, LLC d/b/a ACM LLC ("ACM"), is a New York limited liability company that maintained its principal place of business in Amherst, New York, at all times relevant to this action.

## **JURISDICTION AND VENUE**

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

4. Pursuant to 28 U.S.C. §1367(a), the Court also has Supplemental Jurisdiction over Eileen's claims under the Ohio Consumer Sales Practices Act, R.C. § 1345.02 (A) ("OCSPA") because they share a common nucleus of operative fact with Eileen's claims under the FDCPA.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

6. At all times relevant to this action, ACM collected consumer debts.

7. ACM regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

8. The principal source of ACM's revenue is debt collection.

9. ACM is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

10. As described, *infra*, ACM contacted Eileen to collect a debt that was incurred primarily for personal, family, or household purposes.

11. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

12. Eileen is a "consumer" as defined by 15 U.S.C. § 1692a(3).

13. ACM began contacting Eileen in June 2020, to collect on an illegal loan ("Illegal Loan") originated by American Web Loan ("AWL").

14. AWL recently settled a Class Action regarding its predatory lending practices for $141,000,000.

15. AWL's loans have userous interest amounts, often as high as 400%, and were originated based on a predatory lending scheme that allegedly exploited tribal immunity.

16. As part of her loan application, Eileen provided her telephone number, bank account and rounting number and Social Security number.

17. As a result of the COVID pandemic, and as a result of the concealed loan terms, Eileen was unable to maintain her obligations under the loan agreement.

18. In retailiation, AWL began withdrawing various amounts, on multiple occasions, from Eileen's bank account.

19. As a result of the unauthorized withdrawls, Eileen reported the fraud to her bank, Chase Bank ("Chase").

20. As a result of the voluminous withdrawal attempts, and her apparent association with AWL, Chase flagged Eileen's name and social security number for suspicious activity.

21. Despite Eileen opening up a new bank account with Chase, Chase terminated their 15 year banking relationship with Eileen and informed her she had been "red-flagged" for life.

22. AWL then hired ACM in an attempt to collect whatever AWL could trick Eileen into paying.

23. ACM began attempting to harass Eileen into paying the Illegal Loan around June 2020.

24. Notwithstanding Ohio law and the FDCPA, ACM engaged in collection attempts activity that shocks the conscious.

25. Its collection attempts included harassing and disclosing her debt to her family members, calling her repeatedly, deceitful impersonation, lies, and false threats.

26. Moreover, despite Eileen informing ACM that she had retained counsel to fight the harassment, ACM, again, threatened legal action against her.

27. On at least two occasions, in early summer 2020, despite ACM having Eileen's contact information, ACM telephoned Eileen's mother ("Mom") in connection with the collection of the debt and left a voice message.

28. In these voice messages, ACM disclosed the existence of Eileen's debt to Mom and demanded Mom have Eileen return their call.

29. On at least one occasion, in early summer 2020, despite ACM having Eileen's contact information, ACM telephoned Eileen's Brother in Law ("Brother") in connection with the collection of the debt and left a voice message.

30. In the voice message, ACM disclosed the existence of Eileen's debt to Brother and demanded Brother have Eileen return their call.

31. Both Brother and Mother passed the messages along to Eileen.

32. Eileen's family members mocked Eileen and ACM's actions humiliated Eileen.

33. In an attempt to end the humiliation, on July 15, 2020, Eileen called ACM and demanded they stop harassing her family members.

34. During this conversation, Eileen disputed the debt.

35. ACM did not notify the necessary parties of the dispute.

36. In this call, ACM purported to be McCreary legal office and referenced receiving "papers" from their client.

37. AWL had not sent any "papers" to ACM.

38. In this call ACM's words and conduct would have led a reasonable person to believe ACM was going to file a lawsuit against Eileen.

39. During this phone conversation ACM spewed venom in its words including calling Eileen immoral, asking her how she slept at night and chastized her for being unwilling to fulfill her "moral" obligations.

40. Moreover, during this phone conversation, ACM told Eileen to look in the mirror to find the person that was responsible for her family's harassment.

41. During this phone conversation, ACM indicated that its client, AWL, was going to find out about Eileen's "refusal to pay" and, as such, consequences would result.

4

42. ACM's collection efforts, including but not limited to its telephone calls, caused Eileen emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

43. ACM's collection efforts also intruded upon Eileen's privacy.

44. On information and belief, despite ACM's initial communication with Eileen taking place on July 15, 2020, ACM will not send Eileen, or her attorney the requisite notice required under 15 U.S.C. § 1692g.

45. On July 16, 2020, Eileen called ACM to notify them that she was represented by counsel and provided her attorney's contact information.

46. ACM responded by insinuating that ACM was going to forward a lawsuit to Eileen's attorney.

47. In neither telephone call with Eileen, ACM never disclosed that it was a debt collector.

48. ACM has never indicated that any information Eileen provided to ACM would be used for the purpose of debt collection.

### COUNT ONE

### Violation of the Fair Debt Collection Practices Act

49. Eileen re-alleges and incorporates by reference Paragraphs 6 through 48 above as if fully set forth herein.

50. ACM violated 15 U.S.C. § 1692c(a)(2) by communicating with Eileen notwithstanding knowledge that Eileen was represented by an attorney with respect to the debt.

### COUNT TWO

### Violation of the Fair Debt Collection Practices Act

51. Eileen re-alleges and incorporates by reference Paragraphs 6 through 48 above as if fully set forth herein.

52. ACM violated 15 U.S.C. § 1692c(b) by communicating with a third party in connection with the collection of the debt without Eileen's consent.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

53. Eileen re-alleges and incorporates by reference Paragraphs 6 through 48 above as if fully set forth herein.

54. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

55. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

56. The likely effect of ACM's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Eileen.

57. ACM violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Eileen in connection with the collection of the debt.

## COUNT FOUR

### Violation of the Fair Debt Collection Practices Act

58. Eileen re-alleges and incorporates by reference Paragraphs 6 through 48 above as if fully set forth herein.

59. ACM violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## COUNT FIVE

### Violation of the Fair Debt Collection Practices Act

60. Eileen re-alleges and incorporates by reference Paragraphs 6 through 48 above as if fully set forth herein.

61. ACM violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT SIX

### Violation of the Fair Debt Collection Practices Act

62. Eileen re-alleges and incorporates by reference Paragraphs 6 through 48 above as if fully set forth herein.

63. ACM violated 15 U.S.C. §1692g by failing to send Eileen the required notice within five days of ACM's initial communication with Eileen.

## COUNT SEVEN

### Violation of the Ohio Consumer Sales Practices Act

64. Eileen re-alleges and incorporates by reference Paragraphs 6 through 48 above as if fully set forth herein.

65. ACM's actions in attempting to collect the alleged debt from Eileen as described above constitute a "consumer transaction" as defined in Ohio Rev. Code § 1345.01(A).

66. ACM's actions and omissions described above constitute unfair, deceptive and unconscionable acts and practices, in violation of Ohio Rev. Code §§1345.01 and 1435.02 and the substantive rules promulgated under the OCSPA.

67. ACM knowingly committed the unfair and unconscionable acts and practices described above.

68. ACM violated the OCSPA.

## JURY DEMAND

69. Eileen demands a trial by jury.

## PRAYER FOR RELIEF

70. Eileen prays for the following relief:

    a. Judgment against ACM for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b. Judgment against ACM under the OCSPA for three times the amount of all actual damages, Statutory damages up to $5,000.00 and reasonable attorney's fees, witness fees, court costs, and other litigation costs incurred by Eileen.

    c. For such other legal and/or equitable relief as the Court deems appropriate.

Date: July 17, 2020

By: /s/ Jeffrey S. Hyslip
Jeffrey S. Hyslip, Esq. (0079315)
Hyslip Legal, LLC
1100 W. Cermak Rd., Suite 514
Chicago, IL 60608
Phone: 614-490-4224
jeffrey@hysliplegal.com

*Attorney for Plaintiff*

8